**NORTHWEST INDEPENDENT SCHOOL DISTRICT, Appellant**

v.

**CARROLL INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 02–10–00105–CV.

Court of Appeals of Texas, Fort Worth.

June 19, 2014.

Richard M. Abernathy, Charles J. Crawford, Abernathy Roeder Boyd & Joplin, P.C., McKinney, for Appellant.

Frank Gilstrap, Hill Gilstrap, PC, Arlington, for Appellee.

## OPINION ON APPELLEE'S MOTION FOR EN BANC RECONSIDERATION

TERRIE LIVINGSTON, Chief Justice.

After considering Carroll Independent School District's motion for en banc reconsideration and appellant Northwest Independent School District's response, we grant the motion. We withdraw our prior opinion of February 16, 2012 and substitute the following.

### Background

Carroll Independent School District (CISD) sued Northwest Independent School District (NWISD) alleging a boundary dispute with NWISD. The parties disagreed over the location of the boundary line between the two districts when

other litigation between their relative counties was resolved. *See Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159 (Tex.App.-Fort Worth 2002, pet. denied) (op. on reh'g), *disapproved on other grounds by Martin v. Amerman,* 133 S.W.3d 262 (Tex. 2004). As a result of that litigation, the two counties' boundary line was definitively marked on the ground to reflect the counties' previous agreements; this resulted in the school districts' long-honored boundary line—since 1959 [1]—being somewhat south of the counties' previously-agreed boundary line. *Id.* at 179–80; *Carroll ISD v. Nw. ISD*, 245 S.W.3d 620, 622–23 (Tex.App.-Fort Worth 2008, pet. denied). Thus, CISD claimed the school districts' line should move with the counties' line because the districts' line had been tied to the Tarrant–Denton boundary line.[2] *Carroll ISD*, 245 S.W.3d at 623. This would have expanded CISD's district into NWISD's territory, an area we will call the Disputed Area as the parties have in some of their briefing to this court. *See id.* In an effort to protect itself, NWISD filed the long-existing districts' boundary line metes and bounds description with the Texas Education Agency in accordance with the Texas Education Code. *See* Tex. Educ. Code Ann. § 13.010 (West 2012). CISD filed suit against NWISD in March 2005 claiming jurisdiction over the Disputed Area via trespass to try title and declaratory judgment actions. *Carroll ISD*, 245 S.W.3d at 623.

Shortly thereafter, NWISD filed a motion to dismiss CISD's suit for want of jurisdiction, which the trial court granted. *Id.* The trial court based its decision primarily on its conclusion that the dispute between the two districts was a boundary dispute that should first be determined by the "appropriate authority or authorities as required by the Texas Education Code" and that jurisdiction did not lie in the district court until the parties had first pursued their administrative remedies. *Id.*

CISD filed an interlocutory appeal challenging the dismissal of its claims against NWISD, and our court issued an opinion reversing the trial court's decision to dismiss and remanding the case to the trial court. *Id.* at 626. In that opinion, we specifically held that the Texas Education Code did not apply because one district was not seeking to actually detach or annex additional property into its district, which would have required TEA oversight, but was instead seeking a judicial declaration of the "parties' rights, interests, and obligations" as to the Disputed Area and the location of its boundary, which could be appropriately resolved through a declaratory judgment action. *Id.* at 625–26.

In our opinion, we also held that CISD is a "person" for purposes of the Declaratory Judgments Act and that dismissal for lack of jurisdiction on that ground was improper. *Id.* at 625; *see* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001, 37.004(a), (c) (West 2008). Furthermore, we addressed NWISD's attack on the trial court's jurisdiction based on its theory that the validity of annexation of territory can only be determined by a *quo warranto* proceeding. We disagreed with this basis for the jurisdictional plea as well, noting that the two school districts were merely in a boundary dispute, not attempting to annex additional territory. *Carroll ISD*, 245 S.W.3d at 626.

1. NWISD's boundary was set in 1949. CISD's was set in 1959.

2. When both school districts were created, the descriptions of their common boundary referenced only the then-existing Tarrant County–Denton County boundary line as their boundary line as opposed to a metes and bounds description.

Upon remand, after the parties had conducted further discovery of the jurisdictional facts and filed amended pleadings, NWISD filed an additional plea to the jurisdiction seeking dismissal, which the trial court denied. NWISD also filed a motion for summary judgment, which the trial court granted as to CISD's claims for loss of tax revenue and for trespass to try title. After NWISD filed its second plea to the jurisdiction and motion for summary judgment, CISD further amended its petition to assert additional grounds for relief, which required NWISD to file a supplemental second plea to the jurisdiction that the trial court also denied. Thus, in this interlocutory appeal, NWISD is the appealing party and is challenging the trial court's denial of its supplemental plea to the jurisdiction.

### Does the Law of the Case Doctrine Apply?

██ In two of its three issues, NWISD challenges two legal conclusions already decided by this court in the first interlocutory appeal brought by CISD: that the trial court did not lack jurisdiction (1) because CISD was not required to follow the Texas Education Code's administrative procedure for detaching and annexing property inasmuch as it is not seeking to detach and annex property and (2) because CISD is included in the definition of "person" in the Declaratory Judgments Act. Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011; *Carroll ISD,* 245 S.W.3d at 624–25. Because these two issues have been decided previously by this court, our first opinion in this case constitutes the "law of the case" and determines the resolution of NWISD's first two issues.

██ Under this doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case. *In re Assurances Generales Banque Nationale,* 334 S.W.3d 323, 325 (Tex.App.-Dallas 2010, orig. proceeding); *see In re Henry,* 388 S.W.3d 719, 727 (Tex.App.-Houston [1st Dist.] 2012, orig. proceeding [mand. denied]); *Truck Ins. Exch. v. Robertson,* 89 S.W.3d 261, 264 (Tex.App.-Fort Worth 2002, no pet.). Having decided an issue previously, a court of appeals is not obligated to reconsider the matter in subsequent appeals. *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 372 S.W.3d 177, 182 (Tex.2012); *see also In re Henry,* 388 S.W.3d at 727; *In re Assurances Generales Banque Nationale,* 334 S.W.3d at 325; *Woods v. VanDevender,* 296 S.W.3d 275, 279 (Tex.App.-Beaumont 2009, pet. denied) (all citing *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003)). It may do so in its own discretion, however, and there is not an absolute bar to reconsideration if subsequent hearings, briefing, or pleadings have modified the facts or relief sought. *See Briscoe,* 102 S.W.3d at 716–17. When, however, the jurisdictional issue is really one of law, our discretion to revisit the issue will be used sparingly, if at all. *See, e.g., In re Henry,* 388 S.W.3d at 728; *City of Dallas v. Jones,* 331 S.W.3d 781, 784–85 (Tex. App.-Dallas 2010, pet. dism'd). Regardless, our review of the record and the revised pleadings leads us to decline the invitation to revisit these issues since the issues relate to questions of law. NWISD's first and second issues are therefore overruled.[3]

### Is This a Collateral Attack on Prior Elections and County Commission Orders?

In its third issue, NWISD claims the trial court lacked jurisdiction because

---

**3.** We will, however, address NWISD's refinements of its arguments against the applicability of the Declaratory Judgments Act that are contained within its third issue below.

CISD's suit is "an untimely contest and collateral attack of the [district's] 1948 and 1949 elections and [commissioners courts'] orders creating [NWISD] and its boundaries." We did not address this issue in our 2008 opinion; therefore, we address it now.

NWISD claims that CISD's request for a declaratory judgment is simply a means to an end that circumvents the proper regulatory scheme.

## Use of Declaratory Judgments Act When Boundary Involved or Judgment Questioned

After we issued our opinion in *Tarrant County v. Denton County,* our state's supreme court issued its opinion in *Martin v. Amerman,* which held a portion of our opinion invalid, stating that the use of the Declaratory Judgments Act to decide a boundary determination was incorrect and that a boundary dispute could be resolved by one method only: a trespass to try title action. *Martin,* 133 S.W.3d at 267–68 (holding trespass to try title statute governs method for determining title to real property and boundaries as well), *superseded by* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(c) (reversing *Martin's* holding that relief under the Act is unavailable for boundary disputes). Quickly, however, the state legislature overruled *Martin* by adding subsection (c) to section 37.004 of the Declaratory Judgments Act. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(c). This provision authorizes a party to seek a determination on the construction of "a *statute, municipal ordinance, contract, or franchise* " even when the only determination concerning title to real property involves the "proper boundary line between adjoining properties." *Id.* § 37.004(a), (c) (emphasis added); *see* Act of May 17, 2007, 80th Leg., R.S., ch. 305, § 1, 2007 Tex. Gen. Laws 581, 581 (adding subsection (c) effective June 15, 2007).

NWISD misconstrues the impact of the legislature's revision to section 37.004. Subsection (c) does not say that one may now *only* seek a determination of a boundary line under the Declaratory Judgments Act *if* one is seeking a determination of title. It says simply and only that *if* one is seeking a determination of title, then *notwithstanding that fact,* one may seek a determination or declaration of a boundary under the Declaratory Judgments Act. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(c). In other words, if determining a boundary line may also result in declaring title to real property, a party is no longer prohibited from seeking a declaration of rights under the Declaratory Judgments Act instead of solely under the property code's trespass to try title scheme as the supreme court had previously declared. *See Martin,* 133 S.W.3d at 267–68. The legislation simply removed the prohibition, based on the supreme court's construction of the Act in *Martin,* against using the Act to determine boundaries.[4] Therefore, we conclude that the determination of a boundary is no longer a disqualifier under the Act, even when title may be affected.

NWISD also claims that because the case was filed before the effective date of the amendment to section 37.004, the amendment cannot apply to CISD's action.

4. We do, however, agree with NWISD that many Texas cases have erroneously and perpetually confused the use of the term "boundary" for both a boundary line that actually determines title, i.e., ownership of real property, and a state or political subdivision boundary line that merely determines "territory." Thus, NWISD is correct when it states that this is not a boundary line dispute that involves actual title to, and therefore ownership of, land; it is a boundary dispute that involves the boundary between two independent school districts and the areas to be governed, educated, and taxed by each.

This claim is incorrect for two reasons. First, after the original remand which reversed the trial court's grant of a dismissal, the parties underwent further discovery, and CISD amended its suit after the amendment's effective date, June 15, 2007.[5] Secondly, even if the first petition was filed before the amendment's effective date, applying procedural, remedial, or jurisdictional statutes retroactively does not violate the Texas constitution's prohibition on retroactive laws. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex.2010). While we generally presume that statutes are prospective unless they are expressly made retroactive, procedural and remedial laws generally do not affect vested rights and should be enforced as they exist at the time judgment is rendered. *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex.2012); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 198 (Tex.2007); *see also* Tex. Gov't Code Ann. § 311.022 (West 2013). Additionally, statutes that do not deprive the litigants of a substantive right but speak more to the power of the court may generally be applied at the time of enactment to a pending case. *Estate of Arancibia*, 324 S.W.3d at 548. The Declaratory Judgments Act is such a remedial statute. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 670 (Tex.2009). We conclude and hold that because the Declaratory Judgments Act is remedial in nature, the revision to section 37.004(c) may be applied to pending cases.

■ Next, NWISD claims that the Declaratory Judgments Act cannot be used to declare parties' rights under the statutes and ordinances here simply because it does not list the word "judgment" in its list of items that may be construed under the

Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a), (b). Again, we disagree.

When called upon to determine the meaning and scope of a statutory provision, our primary objective is to ascertain and give effect to the legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2013); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.2011). We look to the plain and ordinary meaning and the words of the statute itself as the best indicator of legislative intent. *Bouldin v. Bexar Cnty. Sheriff's Civ. Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex.App.-San Antonio 1999, no pet.). We may consider the object to be attained and the consequences of a particular construction, among other things. Tex. Gov't Code Ann. § 311.023 (West 2013); *see also In re Smith*, 333 S.W.3d 582, 588 (Tex.2011) (orig. proceeding).

First, the Act specifically authorizes the use of the courts to declare parties' rights under a written contract or "other writings constituting a contract." Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a). NWISD was the creation of the commissioners courts of Tarrant, Wise, and Denton Counties after elections held in each of those counties approved the consolidation of some of their school districts. Likewise, ten years later, the Tarrant County Commissioners Court also created CISD and entered its order adopting the voters' election to create it. The order creating CISD refers to its northern boundary as the Tarrant–Denton County line, thus honoring the previously declared southern boundary for NWISD, which Tarrant County voted for and approved. Arguably, these elections and commissioners courts' orders fall generally within the Act's phrase of "other writings constituting a contract." *Id.*

---

5. The enacting legislation states that the amendment "takes effect immediately." Act of May 17, 2007, 80th Leg., R.S., ch. 305, § 2, 2007 Tex. Gen. Laws 581, 581.

Second, the Declaratory Judgments Act specifically authorizes determinations of "rights, status, or other legal relations" under "statute[s], ordinance[s], contract[s], or franchise[s]." *Id.* The Act allows an interested person to have his or her rights, status or legal relations determined when they arise under such instruments, statutes, ordinances, or franchises. *Id.* Also, we have already held that the word "person" includes independent school districts. *Carroll ISD,* 245 S.W.3d at 625. Thus, a school district may have its rights or legal relations declared under the Act. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a).

Moreover, courts apply the rule of *ejusdem generis* so that a listing of several items does not necessarily exclude others of a similar kind or class unless the listing is clearly intended to be exclusive.[6] And, importantly, the Act itself specifically states, "The enumerations in Sections 37.004 and 37.005 *do not limit or restrict the exercise of the general powers conferred in this section* in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 37.003(c) (emphasis added). This directive evidences a clear legislative intent to construe the enumerations broadly so as to allow the courts to exercise the powers conferred by the statute. *See id.* § 37.002(b) (providing that Act is "to be liberally construed and administered"). Importantly, the resolution of a dispute such as this would "terminate the controversy" and "remove an uncertainty," thus meeting the stated legislative goals. *See id.* § 37.003(c).

■ We therefore conclude and hold that the Declaratory Judgments Act applies when, as here, a school district seeks to resolve a controversy regarding a judg-ment or order issued by a commissioners court even though the words "judgment" and "order" are not contained within the specific enumerations listed in the Act.

## Is This a Prohibited Election Contest or Collateral Attack?

■ NWISD further claims that even if CISD is a person within the meaning of the Declaratory Judgments Act, and even if the Act encompasses a determination of the rights or status of a person under such a judgment or order, the Act cannot apply because CISD's claim is still a collateral attack on the elections held by the two school districts in adopting their boundary and their respective territories, as well as the orders issued to implement those elections.

It points to sections 233.001 through 233.014 of the Texas Election Code. Tex. Elec.Code Ann. §§ 233.001–.014 (West 2010). NWISD argues that the elections creating the district that were held in 1948 and 1949 established NWISD's boundaries and that to challenge those elections, CISD must have timely filed a notice of the contest. We agree with NWISD. There are multiple reasons why CISD cannot pursue an election contest now.

First, CISD is not a proper party to challenge the election held by NWISD; only qualified voters "of the territory covered by an election on a measure may contest the election." *Id.* § 233.002. Second, the time for filing a petition to contest such an election has long passed. *Id.* § 233.006. Any contest must be brought within thirty days of the date the official result is determined, which is an obvious and fatal impediment in this case. *See id.*

■ Furthermore, and more importantly, the result of an election that has not been challenged by a proper contest

6. *See Black's Law Dictionary* 594 (9th ed.    2009).

cannot be collaterally attacked, and the "commissioners' court [order] declaring the result of the election is final." *Horn v. Gibson*, 352 S.W.3d 511, 517 (Tex.App.-Fort Worth 2011, pet. denied). Thus, we conclude and hold that to the extent CISD is attempting to contest an election, this suit is both a defective and untimely contest of that election. We sustain this portion of NWISD's third issue.

We now turn to whether CISD's suit is also an invalid collateral attack on the orders resulting from the election. A collateral attack is an "attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review." *Burgess v. State*, 313 S.W.3d 844, 852 n.10 (Tex.App.-Fort Worth 2010, no pet.). This court has previously held that collateral attacks on prior judgments or orders adopting election results are prohibited, especially when no prior appeal or challenge to such judgments has been made. *Tarrant Cnty.*, 87 S.W.3d at 174 *(citing Yoakum Cnty. v. Gaines Cnty.*, 139 Tex. 442, 163 S.W.2d 393, 396–97 (1942)); *cf. Tarrant Cnty. v. Shannon*, 129 Tex. 264, 104 S.W.2d 4, 9 (1937) (recognizing that judgments of commissioners courts are coequal with judgments of other courts and district court may review those judgments only for lack of jurisdiction or clear abuse of discretion of scope of legal authority). There was no such timely challenge here. The districts' agreements or commissioners courts' orders were not questioned until this challenge. Cities, counties, and political subdivisions act through their elections, ordinances, and agreements and the orders or judgments they create to implement the same. *Killam Ranch Props., Ltd. v. Webb Cnty.*, 376

S.W.3d 146, 154 (Tex.App.-San Antonio 2012, pet. denied) (op. on reh'g); *Amaro v. Wilson Cnty.*, 398 S.W.3d 780, 785 (Tex. App.-San Antonio 2011, no pet.). But in this case, as opposed to *Tarrant County v. Denton County*, in which a party was seeking to avoid the previously agreed upon orders, a fact has changed that makes a term in the agreement ambiguous: the parties are seeking a clarification or determination of the meaning of a phrase in their agreements as a result of an event that happened years after the parties entered into the agreements and entered orders implementing those results. In other words, postjudgment events have created an ambiguity in their orders that makes the enforcement of such orders uncertain at best. Neither party may seek the nullification or avoidance of their agreements, orders, or judgments that resulted therefrom, but they may seek an interpretation or clarification of those agreements, orders, and judgments when external factors have made such interpretations uncertain. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (defining latent ambiguity as one arising from a collateral matter as applied to the contract).

If, however, CISD is seeking to avoid the result of the 1948 and 1949 elections and orders by now claiming the Disputed Area, despite its acquiescence for over sixty years, then we agree that this would be both a defective, untimely election contest and an impermissible collateral attack on the commissioners courts' orders certifying the election results that created NWISD and established its boundary. As noted in NWISD's motion for summary judgment, "A declaratory judgment action is intended to establish *existing* rights, status, or other legal relationships" and is not to "be used as an affirmative ground of recovery to *alter*

rights, status or relationships." We agree that one cannot do by a declaratory judgment action what one cannot otherwise do. *See Bonham State Bank v. Beadle,* 907 S.W.2d 465, 468 (Tex.1995); *Segrest v. Segrest,* 649 S.W.2d 610, 611–12 (Tex.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983).

However, if the suit for declaratory relief is really just one to clarify a term incorporated into both commissioners courts' agreements, and therefore the judgments and orders they both entered, then this narrow objective or request for relief is properly addressed in a declaratory judgment action.

## Responses to Concurring and Dissenting Opinions

In response to Justice Dauphinot's concurring and dissenting opinion, we respectfully disagree that the majority's remand expands the relief available to CISD. The majority opinion limits the relief available to CISD only to locate the *existing* sixty-year-old boundary line between the districts. In CISD's fifth amended petition filed February 17, 2010, it stated,

> CISD contends that the common boundary between the two school districts is located on the county line, as determined by *Tarrant County v. Denton County*[.] . . .
>
> . . . Plaintiff CISD seeks a declaratory judgment that the common boundary between CISD and NWISD lives along the Tarrant/Denton County line as determined by *Tarrant County v. Denton County.* . . .

The answer to this question necessarily encompasses a declaration of *where the sixty-year boundary* has been located and is located. Our remand is limited to that determination and is therefore properly provided for in this narrow remand: i.e., where is the actual line that both parties agreed to, voted on, approved, adopted, and have recognized for sixty years?

Regarding Justice Gardner's concurring and dissenting opinion, the majority opinion does not conflict with the prior opinion in this case or in our *Tarrant County v. Denton County* case. We agree with our prior opinion in this case by saying that whether CISD couches its suit for declaratory judgment relief as an attempt to determine where the common boundary line is—as it did in its pleadings below—or as an attempt to annex the Disputed Area (which we previously stated it could not do), this opinion actually reaffirms and recognizes our prior opinions. Since CISD says it was not seeking to annex additional territory into its district in the first suit, the issue of jurisdiction to hear that action was not implicated. But in some respects, the lawsuit on appeal now specifically requests to move the line from where the parties "historically thought the [boundary] line was." The majority opinion is simply recognizing that if the schools' common boundary line is now moved, the result is an annexation of the Disputed Area, which we previously held CISD cannot now do.

Therefore, we hold that if the objective is to challenge the prior elections or to change or modify the judgments or orders of the commissioners courts by seeking authority to actually move the districts' sixty-year-old boundary line and thus transfer the Disputed Area from one independent school district to another, then such would be an impermissible election contest and an invalid collateral attack via a declaratory judgment action. We hold that upon remand the only proper avenue of declaratory judgment relief is to seek a clarification of the actual, on-the-ground location of the long-existing boundary between the two school districts.

We overrule the balance of NWISD's third issue on appeal.

We affirm the trial court's denial of NWISD's plea to the jurisdiction to the limited extent that CISD seeks a declaratory judgment regarding the parties' orders and judgments creating their existing respective school districts' sixty-year actual boundary location. Because we sustain NWISD's third issue to the extent CISD seeks to contest and challenge NWISD's 1948 and 1949 elections and the orders creating NWISD and its boundaries, in an attempt to move the existing boundary, we reverse the trial court's denial of NWISD's plea to the jurisdiction as to that contest and challenge. Therefore, we remand the case to the trial court for trial on the limited basis set forth in this opinion.[7]

DAUPHINOT, J., filed a concurring and dissenting opinion.

GARDNER, J., filed a concurring and dissenting opinion in which WALKER and GABRIEL, JJ., join.

LEE ANN DAUPHINOT, Justice, concurring and dissenting.

I agree with much of the substance of the majority opinion. I therefore concur in part. But I disagree with the majority's disposition allowing CISD to ask for declaratory relief upon remand for which it did not plead in the trial court. I therefore also dissent in part and write to clarify the holding of the majority.

I agree with the majority's holding that the trial court has no jurisdiction to move the current boundary line, only to declare what the boundary line is and always has been.[1] I also agree with the majority's decision barring CISD from asking the trial court on remand for a declaration that the county line established in *Tarrant County*[2] is the district boundary line.[3]

But I disagree with the majority's decision to remand the case to the trial court to allow it to consider a request for declaratory relief about the location of the boundary line.[4] CISD did not plead for this kind of declaratory relief. It did not assert that the districts disputed where the boundary line is and always has been since their formation, and it did not request a declaration about the location of that long-standing boundary line. It asked specifically for a declaration that the district boundary line is located along the new county line set by *Tarrant County*. That is the only declaratory relief requested by CISD. And that sole declaratory relief requested by CISD is relief that the trial court has no jurisdiction to grant under the majority opinion, a holding that I join.

---

**7.** Six of the justices agree that NWISD may proceed in the trial court on a declaratory judgment action to clarify the school districts' existing sixty-year actual boundary location: Chief Justice Terrie Livingston, Justice Anne Gardner, Justice Sue Walker, Justice Bob McCoy, Justice Bill Meier, and Justice Lee Gabriel. Additionally, four justices agree that the trial court does not have jurisdiction to hear any claim regarding an attempt to move the existing boundary by disputing the result of the 1948 and 1949 elections and subsequent commissioners courts' orders: Chief Justice Terrie Livingston, Justice Lee Ann Dauphinot, Justice Bob McCoy, and Justice Bill Meier. Accordingly, a majority of the justices agree to remand for the trial court to consider CISD's declaratory judgment claim regarding clarification of the boundary line between the two districts.

**1.** *See* Majority Op. at 692.

**2.** *Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159 (Tex.App.-Fort Worth 2002, pet. denied).

**3.** *See* Majority Op. at 692.

**4.** *See id.* at 693.

Generally, amended pleadings may be filed when a case is pending in a trial court upon remand.[5] The majority appears to be remanding to allow CISD to amend its petition—for the sixth time—in light of this general rule. But when, as in this case, an appellate court limits its remand of a case for consideration of a particular issue, the trial court is restricted to a determination of that particular issue.[6] Here, the majority has limited its remand to a particular issue, but it is one that was not raised in the trial court. Not only did CISD not plead this claim for relief, but it did not allege that the parties have a dispute about where the districts have always recognized their common boundary line to be.

Even if CISD could amend its pleadings upon remand to include the claim for declaratory relief that, according the majority, the trial court has jurisdiction to consider,[7] the majority is rendering an advisory opinion by determining whether the plea to the jurisdiction should have been granted on a claim that was not before the trial court over a controversy not alleged to exist.[8]

I would reverse the trial court's denial of NWISD's plea to the jurisdiction on CISD's claim for declaratory relief, grant NWISD's plea as to that claim, and dismiss that claim. Because the majority opinion holds that the trial court has no jurisdiction over CISD's only claim for declaratory relief but remands the case for the limited basis of allowing CISD to pursue declaratory relief that it did not include in its petition, I respectfully dissent.

ANNE GARDNER, Justice, concurring and dissenting.

I join in the majority's decision to grant Carroll ISD's (Carroll's) motion for en banc reconsideration and to withdraw the panel's opinion of February 16, 2012. I join in much of the majority's new en banc opinion on reconsideration, specifically its denial of Northwest ISD's (Northwest's) first two issues. Despite additional evidence developed after this court reversed the trial court's grant of Northwest's first plea to the jurisdiction, I see no reason to revisit those issues.

Where I differ with the majority concerns its sustaining of Northwest's third issue "to the extent that [Carroll] is attempting to contest" the elections to consolidate school districts to create Northwest or "challenge" the commissioners courts' orders that created Northwest in

---

5. *Reynolds v. Murphy*, 266 S.W.3d 141, 146–47 (Tex.App.-Fort Worth 2008, pet. denied).

6. *Id.*

7. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex.2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action."); *United Prod. Corp. v. Hughes*, 137 Tex. 21, 25–26, 152 S.W.2d 327, 330 (1941) (holding that amendments to pleadings are permissible only if jurisdiction has attached); *see also U.S. Fid. & Guar. Co. v. Beuhler*, 597 S.W.2d

523, 524 (Tex.Civ.App.-Beaumont 1980, no writ) (holding that when a plaintiff's claim has been terminated, the case cannot be further prosecuted by filing an amended petition); *but see Osburn v. Denton Cnty.*, 124 S.W.3d 289, 293 (Tex.App.-Fort Worth 2003, pets. denied) (upholding the trial court's grant of a plea to the jurisdiction but holding that the trial court erred by dismissing the case without affording the appellants an opportunity to amend their pleadings to assert other cognizable causes of action).

8. *See Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 190 (Tex.App.-Fort Worth 2004, pet. denied) (en banc op. on reh'g) (stating that courts of appeals may not render advisory opinions).

1949. I disagree that Carroll is, to any extent, contesting the elections creating Northwest in 1948 or collaterally attacking the commissioners courts' orders establishing the southern boundary for Northwest in 1949.

**The issue**

The majority only briefly references the crux of the case in footnote 2 of its opinion. Carroll shares a common boundary with Northwest; the northern boundary of Carroll is the southern boundary of Northwest. Northwest was created by consolidation of several school districts located in Tarrant, Denton, and Wise Counties by 1949 county commissioners courts' orders of those counties, approving elections in each district. Neither the elections nor the orders describe Northwest's southern boundary by a metes and bounds description but, instead, identify its southern boundary only as lying along the Tarrant–Denton County line. The Tarrant County Commissioners Court order that created Carroll in 1959 likewise did not describe Carroll's northern boundary by metes and bounds but referred to that boundary only as the "North Line" of Tarrant County. Nothing in the field notes or orders of 1949 or 1959 describes or defines the common boundary of the school districts as other than the Tarrant–Denton County line. And nothing in the orders identifies the location of either the county line or the districts' common boundary on the ground.

Contrary to the majority's terminology (used by it to describe Northwest's and Carroll's common boundary), no language in the documents pertaining to the elections or in the field notes or the commissioners courts' orders creating the school districts identifies the location of the districts' common boundary as the "long-honored" boundary, or ties it to the "then-existing" county line. Those terms in the majority opinion appear only in Northwest's brief. It is only Northwest's position that this court "moved" the county line from its "historic," "long-accepted" location by our decision in our previous case in which we established the location of the Tarrant–Denton County line, which I address below. Use of that terminology by the majority gives a misleading impression that this court is assuming as true that a different location, namely, the 1852 "White line," was somehow previously established and should prevail as the districts' mutual boundary rather than the Tarrant–Denton County line because the White line is where representatives of the school districts believed the county line to be when the school districts were created. But that issue, if it is an issue at all, has yet to be determined, and is not before us on this appeal.[1] As we observed in our opinion in the first appeal in this case, the precise location of the Tarrant–Denton County line was the subject of a protracted dispute between the two counties resulting in numerous surveys over 150 years ago. *Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159, 161–67 (Tex.App.-Fort Worth 2002, pet. denied) (op. on reh'g), *disapproved on other grounds, Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex.2004), *superseded by* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(c) (West 2012). The counties

---

1. I also disagree with the majority's holding that the orders of the county commissioners courts defining the districts' common boundary are rendered "ambiguous" by this court's 2002 decision defining the location of the Tarrant–Denton County line. The county commissioners courts agreed to the county line where it was established by this court's 2002 opinion. Carroll claims that the language of the orders establishing the boundaries of the districts is clear in defining the districts' common boundary, and Northwest has pled a number of defenses but ambiguity is not one of them. That issue would only concern the merits, rather than jurisdiction, and is premature at this juncture.

chose to tie the common school district boundary between Northwest and Carroll school districts to the Tarrant–Denton County line when they created the two school districts in 1949. But therein lies the problem. This court's 2002 decision in *Tarrant County v. Denton County* held that the county line was not definitively established on the ground until 2002. *Id.* at 180. Thus, how Northwest could unilaterally arrive at what the majority refers to as the "long-existing districts' boundary line metes and bounds description" that Northwest then filed with the Texas Education Agency and that differs from the Tarrant–Denton County line is not supported by the record before us.

**Our first opinion**

In its first plea to the jurisdiction, Northwest contended (among other grounds as discussed by the majority) that Carroll was seeking to change the geographical boundaries separating the two school districts and to transfer to itself Northwest property along with a significant tax base and student population. Northwest argued that the trial court had no jurisdiction because section 13.051 of the Texas Education Code provided the exclusive administrative mechanism for changing school district boundaries by which territory could be "detached from a school district and annexed to another school district that is contiguous to the detached territory." *See* Tex. Educ.Code Ann. § 13.051 (West 1999).

In reversing the trial court's grant of Northwest's plea to the jurisdiction, we expressly rejected Northwest's contention that Carroll was seeking to "change the existing boundary line between the two districts." *Carroll ISD v. Nw. ISD*, 245 S.W.3d 620, 624 (Tex.App.-Fort Worth 2008, pet. denied). We held: "Rather, Carroll ISD is seeking a judicial declaration regarding whether the Disputed Area

is in the Carroll ISD or the Northwest ISD." *Id.* We pointed out that Carroll's pleadings alleged that the two school districts had "always defined their joint boundary as coterminous with the Tarrant–Denton County line," that this court in *Tarrant County v. Denton County* had determined that the county line is further north than the two school districts previously believed, and that, consequently, a boundary dispute had arisen between the districts. *Id.* at 624–25. Thus, we held in the first appeal that Carroll

does not seek to detach and annex the Disputed Area from [Northwest], but seeks only a judicial determination regarding in which of those districts the Disputed Area is, and has always been, located. Accordingly, the trial court erred by granting [Northwest's] plea to the jurisdiction *on the ground that [Carroll] seeks a modification of the existing boundary line between the two districts.*

*Id.* at 625 (emphasis added).

**This Appeal**

In its appeal from the denial of its second plea to the jurisdiction, Northwest again argues that the trial court lacked jurisdiction because Carroll is seeking to "detach" and "annex" the Disputed Area and that the education code provides the exclusive remedy. I agree with the majority's overruling of Northwest's first and second issues, reiterating our holdings in the first appeal that Carroll is not seeking to "detach" or "annex" additional property into its district but, rather, is seeking a judicial declaration of the parties' rights, interests, and obligations in the Disputed Area and the location of the common boundary between the districts, and that these issues may be decided in a declaratory judgment action. I agree that our holdings on these issues are "law of the case" in this appeal.

In its second plea to the jurisdiction, Northwest raised new, alternative grounds for dismissal, urging that Carroll's suit is either an untimely election challenge or an impermissible collateral attack. In its third issue on this appeal, Northwest argues that the elections and orders that created the Northwest school district established the boundaries of Northwest, that Carroll's suit constitutes either a "challenge" to those elections or to the orders approving the elections by seeking to move or change Northwest's southern boundary, and that, to do so, Carroll must have timely filed an election contest within thirty days, failing which the orders of the county commissioners courts declaring the result of those elections—establishing the location of the boundaries of the Northwest school district—cannot be "collaterally attacked" by Carroll. The majority appears to agree with Northwest, in part, by holding that "to the extent [that Carroll] is attempting to contest an election," or to question the commissioners courts' orders creating the school districts and their boundaries, Carroll's objective is an impermissible collateral attack, and "if" Carroll is attempting to change or modify the judgments or orders of the commissioners courts to avoid the result of the 1948 and 1949 elections by now claiming the Disputed Area, this would be an untimely election contest and collateral attack on the orders. The only way Carroll could do that is by seeking authority to actually "move" the Disputed Area from one independent school district to another, according to Northwest. But this is the very same faulty premise that we rejected in the first appeal and again in our first opinion in this appeal, i.e., that Carroll is seeking to "move" the districts' common boundary.

To the extent that the majority is suggesting that Carroll is now seeking to move the boundary line so as to render Carroll's declaratory judgment action an impermissible election contest or collateral attack on the 1949 and 1959 elections and consolidation orders, it is in direct conflict with our holding in the first appeal (involving the education code) that Carroll is *not* seeking to move the common boundary of the two school districts. The majority's assertion is also not correct that Carroll claims that the school districts' common boundary line should "move with" the counties' common line. This is only what Northwest argues that Carroll claims; it is not what Carroll claims. As we recognized in the prior appeal, Carroll is not contending that the districts' common boundary line should "move" with the county line. *Carroll ISD,* 245 S.W.3d at 623.

Most surprisingly, the majority incorrectly implies that Carroll is claiming that the Tarrant–Denton County line itself was "moved" by this court in our 2002 decision. The county line was not "moved." For the Tarrant–Denton county line to have been "moved," there must have been a prior location of the county line established on the ground for it to have "moved" from. Thus, the majority's implicit determination that Carroll is claiming that the county line was moved interjects yet a new assumption, that there was a previously established boundary line between the two counties. This assumption is the same argument made by Denton County that we rejected in our 2002 decision establishing the mutual Tarrant–Denton County line.[2]

---

2. Carroll has consistently recognized since the outset of its suit that this court did not "move" the Tarrant–Denton County line in 2002. *See, e.g.,* Reply Br. of Carroll in *Carroll ISD v. Nw. ISD,* No. 02–06–00242–CV, 2007 WL 532041, at *2 (Jan. 3, 2007) ("According to Northwest, we are 'seeking to amend the geographic boundaries separating [the two school districts].' ... But we are not seeking to 'amend' the boundaries or to 'transfer' the

## A repeat of history?

Our 2002 decision set out a history of various attempts to survey and establish portions of the Tarrant–Denton County line, including the crucial northeast corner of Tarrant County that also served as the northwest corner of Dallas County and the southeast corner of Denton County. *Tarrant Cnty.*, 87 S.W.3d at 161–66. Surveys were performed by surveyors William D. Orr in 1850, Warren A. Ferris in 1850, George White in 1852, and A.G. Walker in 1854. *Id.* at 163–66. Because of inconsistencies in those surveys, the passage of time, and deterioration and disappearance of virtually all markers, posts, and dirt mounds as monuments set by White in 1852 (the only prior survey of the entire common boundary between Denton and Tarrant Counties), which came to be known as the "White line," the exact location of the county line on the ground remained uncertain through the years.

Fast forwarding past other surveys and attempts by the counties to find the location of the county line, Denton County requested assistance in 1984 from Dallas and Tarrant Counties to determine the location of their southern county line, and in 1986, those counties together with Collin County entered into an agreement entitled "Interlocal Cooperation Agreement," which stated that its purpose was to ascertain and locate on the ground the northern boundaries of Dallas and Tarrant Counties and the southern boundaries of Denton and Collin Counties. *Id.* at 166.

An order of the Denton County Commissioners Court, entitled "Order Providing for the Ascertainment of County Line," approved the agreement, stating "[t]here have been questions regarding the precise location of the boundary line marking the northern boundary of Dallas County where it is common with the southern boundary of Collin County, the southern boundary of Denton County and the point where it is common with the northeastern corner of Tarrant County" and that " '*it appears that said line is not sufficiently definite and well-defined*' but that the line *could be ascertained* and that it is *Denton County's desire to ascertain the location of the boundary line and to mark the same on the ground.*" *Id.* at 170 (emphasis added). By that agreement, each of the four counties, including Denton County, agreed to hire surveyor Don Jackson to "ascertain by actual survey the southern boundary of Denton County, Texas," where it is common with the northern boundary of Tarrant County and to mark and establish said line and the southeastern corner of Denton County. *Id.*

Jackson conducted his survey and prepared field notes locating the boundaries and corners as specifically provided by the order and contracts for his services. *Id.* at 171. Jackson's field notes determined that Ferris and, therefore, White, had *erroneously located* Dallas County's northwest corner and, hence, Tarrant County's northeast corner and the projection of the counties' mutual boundary, some 2200 feet south and 1300 feet east of where it should have been, and he set and monumented those counties' common corner per the interlocal agreement. *Id.* at 171. The coun-

---

Disputed Area. Rather, we say that the county line has been the boundary between the two school districts *from the beginning.*"); *see also* Carroll's Appellee's Br. in this appeal, *Nw. ISD v. Carroll ISD*, No. 02–10–00105–CV, 2010 WL 3641581, at *21 (Aug. 31, 2010) (contending that Northwest bases its argument on a "flawed premise—that the decision in *Tarrant County v. Denton County* 'moved' the county line and that we are now seeking to 'move' the school district boundary.... *But under Tarrant County v. Denton County, the county line did not move.* Rather, in that case, this Court held that the location of the county line had never been determined ...." (emphasis added)).

ties approved Jackson's survey, and Denton County forwarded it to the General Land Office with a cover letter from the Denton County Judge stating that the Denton County Commissioners Court had approved the reestablishment of the county line "due to an error in surveying in the 1850's." *Id.* at 173.

Shortly thereafter, Denton County denied the validity of the interlocal cooperation agreement and denied that the Jackson survey established the Tarrant–Denton County line pursuant to the agreement. *Id.* at 166. Instead, Denton County took the position that the county line had been previously established along the line that had been surveyed by George White in 1852 (the White line). *Id.* Tarrant County then brought suit to determine the common boundary between the two counties under section 72.009(a) of the Texas Local Government Code. *Id.; see* Tex. Loc. Gov't Code Ann. § 72.009(a) (West 2008). Denton County counterclaimed, contending that the 1852 survey by George White had been established under prior law as the true boundary line between the counties. *Tarrant Cnty.,* 87 S.W.3d at 166.

Under section 72.009(a) of the local government code, a district court has jurisdiction over a suit by a county against an adjacent county to establish the location of a common boundary line, but only if the

location of the county line has not already been established under prior law. Tex. Loc. Gov't Code Ann. § 72.009(a), (b). Denton County brought its counterclaim pursuant to subsection (b), which states that if a boundary has been established under prior law, that boundary must be declared to be the "true boundary." *Tarrant Cnty.,* 87 S.W.3d at 166–67. The trial court rendered judgment in favor of Denton County, declaring that the White line was the established common county line under prior law. *Id.* at 167. We reversed, holding that, at the time of the interlocal cooperation agreement among the four counties in 1986, the common boundary between Tarrant and Denton Counties was not, by Denton County's own admission and agreement, previously established or "definite and well defined," and we further held that the White line relied upon by Denton County actually lay somewhat to the south of the "true boundary" between the counties, which we determined was the boundary located by surveyor Don Jackson, as agreed and approved by both Tarrant and Denton Counties. *Id.* at 172, 175. Thus, this court did not hold that the county line had been "moved." Rather, we held that the county line was not "sufficiently definite and well defined" and that the Interlocal Cooperation Agreement settled that dispute as to the location of the county line. *Id.* at 172, 173.[3]

---

**3.** This court reversed the trial court's judgment, which had adopted the White line and rendered judgment in favor of Tarrant County based on the validity of the Interlocal Cooperation Agreement and the counties' orders approving the agreement and the Jackson survey, and we remanded the cause to the trial court for entry of judgment adopting the Jackson survey and for entry of any other orders necessary for resurveying and remarking the boundary. *Id.* at 179–80. On remand, the trial court signed a modified and corrected judgment on April 6, 2004, appointing Garey Gilley to perform the resurvey and remarking of the boundary. We dismissed an appeal by

Denton County from that judgment for want of jurisdiction. *Denton Cnty. v. Tarrant Cnty.,* 139 S.W.3d 22, 24 (Tex.App.-Fort Worth 2004, pet. denied). While that appeal was pending, the trial court signed an order appointing an additional surveyor to assist Gilley and to "reconfirm and verify" his work. We conditionally granted a writ of mandamus sought by Tarrant County to require the trial court to vacate that order. *In re Tarrant Cnty.,* No. 02–05–00274–CV, 2005 WL 3436582, at *1, 4 (Tex.App.-Fort Worth Dec. 12, 2005, orig. proceeding [mand. denied]) (mem. op.). While that proceeding was still

If the White line had been established as the mutual county line on the ground under prior law, the trial court would not have had jurisdiction under section 72.009(a) of the local government code over the suit for declaratory judgment brought by Tarrant County that resulted in our 2002 decision establishing the true location of the county line. We determined that there was no such location established on the ground prior to this court's 2002 decision, which finally—and for all time—established the true location of the Tarrant–Denton County line.

The majority states that in 2003, after our decision in *Tarrant County* but before the trial court had entered its modified judgment for the resurvey in accordance with our mandate, Northwest filed what the majority describes as the "long-existing districts' boundary line metes and bounds description" with the TEA in accordance with the education code "to protect itself" (from what, the majority does not say). This is not a correct description of Northwest's 2003 resolution. As we specifically stated in our opinion on the first appeal in this case, the resolution filed by Northwest in 2003 unilaterally *"purported* to establish the school district's southern boundary by a metes and bounds description *that appears to follow what is known as the 'White line.'"* *Carroll ISD,* 245 S.W.3d at 622 (emphasis added). But, just months before, we had rejected the White line as the true boundary line between the counties in *Tarrant County v. Denton County. Tarrant Cnty.,* 87 S.W.3d at 179–80. Carroll countered Northwest's resolution with a letter to the TEA stating that the northern boundary of its district followed the true county line as established by our 2002 decision in *Tarrant County v. Denton County* and then filed this suit to resolve the district bound-

ary dispute from whence these interlocutory appeals from orders on pleas to the jurisdiction by Northwest have emanated. I would overrule Northwest's three issues, affirm the current order denying Northwest's second plea to the jurisdiction, and remand the cause to the trial court.

This leads me to the other concurring and dissenting opinion on this appeal, which inexplicably says the majority opinion holds that Carroll is barred "from asking the trial court on remand for a declaration that the county line established in [the 2002 Tarrant County–Denton County decision] is the district boundary line." I find no hint in the majority opinion that it holds any such thing. If it could possibly be interpreted to so hold, I would vehemently disagree.

The other concurring and dissenting opinion also states that Carroll has not asserted that the districts' dispute where the boundary line is and always has been, nor has it requested a declaration as to about the location of the boundary line. But that is precisely what Carroll asserts and claims. On the first appeal, we carefully analyzed Carroll's pleadings and concluded that Carroll was seeking "a judicial declaration regarding whether the Disputed Area is in the Carroll ISD or the Northwest ISD"; that the two districts "have always defined their joint boundary as coterminous with the Tarrant–Denton County line; that a court has determined that the county line is farther north than the two school districts previously believed; and that, consequently, a boundary dispute has arisen" and that "the relief [Carroll] seeks is not detachment and annexation but a judgment resolving the boundary dispute by declaring what the parties' rights, interests, and obligations are in the Disputed Area." *Carroll ISD,*

pending, this suit was filed by Carroll ISD on

March 1, 2005.

245 S.W.3d at 624–25 (footnote omitted). We reiterated that Carroll seeks only a judicial determination regarding in which of these districts the Disputed Area is and always has been located. *Id.* While I fully agree that Carroll cannot seek to avoid, nullify, or change the elections or orders of the commissioners courts, nor may it actually move the Disputed Area from one independent school district to another, I disagree that Carroll is attempting to do so, and I dissent from the majority's sustaining of Northwest's third issue to that extent. I join in the majority's overruling of the remainder of Northwest's third issue.

For all of the reasons stated above and in our opinion on the prior appeal in this case as well as in *Tarrant County v. Denton County,* I would overrule Northwest's three issues, affirm the trial court's denial of Northwest's plea to the jurisdiction, and remand the cause for further proceedings in accordance with our opinion.

WALKER and GABRIEL, JJ., join.